UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KEVEN MCCORD and TRACY MCCORD, ) | |
| ) | |
| Plaintiffs, ) | Case No. 3:12-cv-1191 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| GOLDMAN SACHS MORTGAGE CORP., ) | |
| MTGLQ INVESTORS, L.P., OCWEN LOAN ) | |
| SERVICING, LLC, WILSON & ASSOCIATES, and ) | |
| DOES 1-10, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the court is a Motion for Summary Judgment filed by the defendants, Goldman Sachs Mortgage Corporation ("Goldman Sachs"), MTGLQ Investors, L.P. ("MTGLQ"), Ocwen Loan Servicing, LLC ("Ocwen"), and Does 1-10 (together, the "Mortgage Defendants") (Docket No. 39), to which the plaintiffs have filed a Response in opposition (Docket No. 53), and the Mortgage Defendants have filed a Reply (Docket No. 55). For the reasons discussed herein, the motion will be granted.

## BACKGROUND[1]

As an initial matter, the plaintiffs have failed to comply with both the Federal Rules of Civil Procedure and Local Rules because they neglected to file a proper Response to the

---

[1] The facts are drawn from the Mortgage Defendants' Statement of Undisputed Facts (Docket No. 41) and the affidavits and exhibits filed in support of the parties' respective briefs (Docket No. 39, Exs. 1-5; 42, Docket No. 42, Exs. 1-5 (Affidavit of Brittany Simpson ("Simpson Affidavit")); Docket No. 43, Exs. 1-16 (Affidavit of Gina Feezer ("Feezer Affidavit")); Docket No. 54 (Affidavit of Keven McCord ("McCord Affidavit"))).

1

Mortgage Defendants' Statement of Undisputed Facts (Docket No. 41). Accordingly, pursuant to Local Rule 56.01(g), the court deems the entirety of the Mortgage Defendants' Statement of Undisputed Facts to be undisputed.

## I. The Plaintiffs Purchase a Home

In August 2005, plaintiffs Keven and Tracy McCord, who are husband and wife, decided to purchase property located at 3414 Westbrook Drive, Murfreesboro, Tennessee (the "Property"). Before purchasing the Property, the plaintiffs paid for an appraisal of its value. The appraisal valued the Property at $200,000, and the McCords took out two loans to purchase their new home.

### A. The Loans

The plaintiffs' 2005 home loans were in the form of two notes, both executed by the plaintiffs on August 24, 2005. The first note ("First Note") was executed in the principal amount of $143,792 in favor of Long Beach Mortgage Company ("Long Beach"). The second note was executed in the principal amount of $35,948 ("Second Note"), also in favor of Long Beach. On the same day, the plaintiffs executed two deeds of trust in favor of Long Beach (the "Deeds of Trust") to secure the First and Second Notes (together, the "Notes" or "Loans"). Long Beach was the original lender and servicer of the Loans and transferred $179,740 to Wells Fargo Bank Minnesota, N.A. ("Wells Fargo"), the seller of the Property.

The next day, on August 25, 2005, a Special Warranty Deed (the "Warranty Deed") evidencing the plaintiffs' purchase of the Property was executed by Wells Fargo. Accordingly, the parties appear to agree that, because of this error, at the time that the McCords and Long Beach executed the Loans and the Deeds of Trust, the McCords had not yet acquired title to the

2

Property from Wells Fargo. The Warranty Deed was publicly filed with the Rutherford County Register of Deeds on October 12, 2005.

### B. The History of the First Note

Around September 22, 2008, Washington Mutual Bank, F.A. ("Washington Mutual"), a successor-in-interest to Long Beach, sold and negotiated the First Note to MTGLQ, another lender (and another of the Mortgage Defendants). Around May 21, 2012, MTGLQ sold and negotiated the First Note to Goldman Sachs. Goldman Sachs is the current owner and holder of the First Note.

Long Beach, as original servicer of the First Note, immediately transferred its servicing rights to Washington Mutual after its execution on August 24, 2005. On July 1, 2008, Washington Mutual transferred the servicing rights of the First Note to Litton Loan Servicing LP ("Litton"). On November 1, 2011, Litton assigned the servicing rights of the First Note to defendant Ocwen. Ocwen is the current mortgage loan servicer for the First Note.

### C. The History of the Second Note

About a month after execution of the Second Note, in September 2005, Long Beach sold and negotiated the Second Note to Goldman Sachs. Goldman Sachs is the current owner and holder of the Second Note.

Long Beach, the original servicer of the Second Note, transferred its servicing rights to Ocwen in May 2006. In late December 2007, the Second Note's servicing rights were transferred from Ocwen to Litton. Subsequently, the servicing rights were transferred back to Ocwen from Litton on November 1, 2011. Ocwen is the current servicer of the plaintiffs' Second Note.

## II. The Plaintiffs' Chapter 13 Bankruptcy Proceedings

On August 22, 2006, the plaintiffs filed a Chapter 13 bankruptcy petition (the "Bankruptcy Petition") with the United States Bankruptcy Court for the Middle District of Tennessee. The plaintiffs' Bankruptcy Petition lists the Property as an asset valued at $155,000 and subject to secured claims of $189,050.20. The plaintiffs listed Washington Mutual and Ocwen as creditors. Specifically, the Bankruptcy Petition identifies Washington Mutual as a secured creditor with a claim of $153,610.14 and Ocwen as a secured creditor with a secured claim in the amount of $1,389.86 and an unsecured claim of $34,050.20 on the property. The plaintiffs declared, under penalty of perjury, that the information in their Bankruptcy Petition was true and correct. The plaintiffs did not assert in their Bankruptcy Petition that the claims on the Property were contingent, unliquidated, or disputed.

On September 6, 2006, Long Beach filed a proof of claim with the Bankruptcy Court in the amount of $152,591.16 secured by the Property. The proof of claim directs notices to be sent to Washington Mutual as the loan's servicer. On August 28, 2006, MTGLQ, on behalf of Goldman Sachs, filed a proof of claim with the Bankruptcy Court in the amount of $37,128.40 secured by the Property. The proof of claim directs notices to be sent to Ocwen as servicer. The plaintiffs did not object to Long Beach's or MTGLQ's proofs of claims.

On December 31, 2008, Litton filed a Notice of Service Transfer with the Bankruptcy Court, stating that the servicing rights for the Second Note had transferred to Litton and that Litton would service the loan for MTGLQ. On January 1, 2009, Litton filed a Notice of Transfer of Claim with the court stating that Washington Mutual, as a successor-in-interest to Long Beach, had assigned the mortgage securing the First Note to MTGLQ. The plaintiffs did not object to these notices of transfer.

A Chapter 13 Plan was confirmed by the Bankruptcy Court on October 10, 2006 ("Confirmation Order"). Paragraph 4(d)(iii) of the court's Confirmation Order lists Ocwen and Washington Mutual as possessing long term debts related to the Property.

On February 10, 2009, the Bankruptcy Court issued an Order to Modify the Chapter 13 Plan to modify the continuing payment of the Loans. The plaintiffs made payments on the Loans throughout the bankruptcy proceedings. On July 26, 2011, the plaintiffs were granted a discharge by the Bankruptcy Court ("Discharge Order").

### III. Default and Foreclosure

Shortly after their discharge from bankruptcy, the plaintiffs began falling behind on their mortgage payments. As of December 1, 2011, the plaintiffs owed Ocwen $12,674.96 in past due amounts on the First Note. As of March 1, 2012, the plaintiffs owed Ocwen $1,717.44 in past due amounts on the Second Note.

Due to the plaintiffs' failure to make their required payments, Ocwen sent the plaintiffs a Notice of Default on February 15, 2012. On June 14, 2012, Goldman Sachs, through Ocwen, appointed Wilson & Associates, PLLC ("Wilson") as a Successor Trustee to the Property.

Following the plaintiffs' default, Wilson initiated foreclosure proceedings on the Property. Mr. McCord testified at his deposition that, prior to the foreclosure, the plaintiffs attempted to modify the Loans, but were unsuccessful. (Docket No. 39, Ex. 1 at 123-24.) A foreclosure sale took place on September 5, 2012 at the Rutherford County Courthouse in Murfreesboro, Tennessee. At the sale, Goldman Sachs purchased the Property for $153,319.51. The plaintiffs were aware of the September 5, 2012 foreclosure sale before the sale took place. Moreover, it is undisputed that the plaintiffs were unable to pay the current balance on the First Note to prevent a foreclosure sale of the Property at the time of its sale.

The plaintiffs are currently residing at the Property without making any payments to Goldman Sachs and they have not set aside any money to make payments on the First and Second Notes.[2]

IV. **The Action**

On October 17, 2012, the plaintiffs filed this action in the Circuit Court for Rutherford County, Tennessee against some of the parties who had been involved in the mortgage on the Property and its foreclosure: Goldman Sachs, MTGLQ, Ocwen, Wilson & Associates, and an unidentified group of individuals, Does 1-10. In their lengthy Complaint, the plaintiffs alleged a panoply of claims, including breach of fiduciary duty, fraud in the inducement, common law fraud, negligence, unjust enrichment, false and deceptive trade practices in violation of the Tennessee Consumer Protection Act, T.C.A. § 47-18-101 *et seq.* ("TCPA"), slander of title, and breach of contract. With the exception of their breach of contract claim, the plaintiffs' claims are related to their contention that the Notes are void and unenforceable as a matter of law for a variety of reasons (the "Mortgage Validity claims"). The Complaint requests quiet title of the Property[3], monetary damages, an order declaring the Loans void, injunctive relief to preclude eviction from the Property, and various other monetary awards.

---

[2] Although the plaintiffs have made no payments to Goldman Sachs, on December 10, 2013, the court granted the Mortgage Defendants' Motion to Compel Plaintiffs to Make Monthly Payments into Court. (Docket No. 35.) Beginning February 5, 2014, the plaintiffs were required to submit payments in the amount of $1,338.31 to the Clerk each month. After the plaintiffs failed to timely make their second monthly payment on March 5, 2014, the court further ordered that the plaintiffs be fined a daily fee of $25 for each day that the plaintiffs are late in making their monthly payments. (Docket No. 58.)

[3] The court notes that the plaintiff's "quiet title claim" (Count I of the Complaint) is actually a remedy and not a separate cause of action. *See Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013).

The defendants removed the action to this Court on November 16, 2012. Defendant Wilson filed a Verified Denial and Answer to the Complaint on November 21, 2012. The Mortgage Defendants filed an Answer to the Complaint on December 14, 2012 and also pleaded a counterclaim seeking reformation of the Deeds of Trust so that they be rendered effective on August 25, 2005 (the date of execution of the Warranty Deed transferring title to the plaintiffs), or, alternatively, an order providing that Goldman Sachs possesses a valid equitable lien on the Property.

The Mortgage Defendants filed the pending motion on January 17, 2014, supported by a Statement of Undisputed Facts filed pursuant to Fed. R. Civ. P. 56 and Local Rule 56.01 and two affidavits, as well as numerous exhibits. (Docket Nos. 39-43, 45.) In opposition, the plaintiffs filed a memorandum on February 21, 2014 and the McCord Affidavit. (Docket Nos. 53-54.)

## ANALYSIS

The Mortgage Defendants have advanced several arguments in support of their Motion for Summary Judgment. As an initial matter, the Mortgage Defendants have asserted that the doctrines of judicial estoppel and *res judicata* bar the plaintiffs' Mortgage Validity claims because the plaintiffs failed to bring claims regarding the enforceability of the Loans during their August 2006 Chapter 13 bankruptcy proceedings. In the alternative, the Mortgage Defendants submit that the plaintiffs' various claims should fail as a matter of law because it is undisputed that the plaintiffs have not established certain essential elements of each of their claims. Finally, the Mortgage Defendants also move for summary judgment on their counterclaim for reformation of the Deeds of Trust, asserting that the after-acquired property doctrine requires that the deeds be reformed and rendered effective on August 25, 2005, as the parties to the Loans originally intended.

I.  **Summary Judgment Standard**

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

II. **The Doctrine of Judicial Estoppel Does Not Apply**

"Judicial estoppel is an equitable doctrine to be invoked by this court at its discretion." *Pennycuff v. Fentress Cnty. Bd. of Educ.*, 404 F.3d 447, 453 (6th Cir. 2005) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). The doctrine generally "forbids only the use of 'intentional self-contradiction . . . as a means of obtaining unfair advantage.'" *Id.* (quoting *New Hampshire*, 532 U.S. at 751). In their briefs on the issue, neither party identifies the proper legal standard for the application of judicial estoppel.[4]

---

[4] Additionally, the facts here are particular and distinguishable from the case law upon which the Mortgage Defendants rely to advance their judicial estoppel argument. The parties do not cite—nor has the court been able to find—any precedent applying the doctrine of judicial estoppel in a case where, in a prior bankruptcy case, the debtors' omission was, in reality, a failure to identify and dispute the enforceability of a secured claim on an asset due to a likely clerical error in the transfer of title and execution of loan documents. Instead, all of the cases cited by the Mortgage Defendants are based upon a debtor's failure to disclose an asset on her

Under Sixth Circuit law, to support a claim of judicial estoppel, the court must find that (1) the plaintiffs assumed a position that was contrary to the one that they asserted under oath in their bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) the plaintiffs' omission did not result from mistake or inadvertence. *See White*, 617 F.3d at 477-78. Although the first two elements of judicial estoppel are undisputed here, the parties fail to address the third element. The Sixth Circuit has determined three circumstances under which a debtor's failure to disclose an asset or a liability might be deemed mistaken or inadvertent: (1) where the debtor lacks knowledge of the factual basis of the undisclosed claims; (2) where the debtor has no motive for concealment; and (3) where the evidence indicates absence of good faith. *Id.*

Here, the record reflects that the plaintiffs' failure to dispute the validity of the Loans was very likely a mistake because, according to a short affidavit submitted by Keven McCord, the plaintiffs do not recall ever receiving or reviewing the Warranty Deed prior to the preparation of this lawsuit following the foreclosure on the Property. (Docket No. 54.) The Mortgage Defendants have presented no evidence to the contrary; instead, they appear to rely on the fact

---

bankruptcy petition. *See, e.g.*, *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472 (6th Cir. 2010) (plaintiff's failure to disclose sexual harassment claim as an asset triggered doctrine of judicial estoppel and barred her claims as a matter of law); *Browning v. Levy*, 283 F.3d 761 (6th Cir. 2002) (judicial estoppel did not bar a corporation's successor-in-interest's legal malpractice claims, where plaintiffs did not disclose the claims at bankruptcy but where plaintiffs' failure to disclose was consistent with inadvertence and mistake); *Browning Mfg. v. Mims (In re Coastal Plains, Inc.*), 179 F.3d 197 (5th Cir. 1999) (concluding that judicial estoppel precluded plaintiff's claims, where plaintiff failed to disclose $10 million claims against defendant in its bankruptcy schedule); *Duff v. Lockheed Martin Energy Sys., Inc.*, No. 06-cv-41, 2006 WL 2473659 (E.D. Tenn. Aug. 25, 2006) (holding that judicial estoppel precluded plaintiff's employment discrimination claims, where he had already filed a pending administrative charge against his employer and failed to disclose his claim as an asset on his bankruptcy petition).

that the Warranty Deed was a public document and that, therefore, the plaintiffs had constructive knowledge of the discrepancy between the transfer of title (in the Warranty Deed) and the Deeds of Trust executed to secure the Loans. However, the standard requires that the Mortgage Defendants demonstrate that it is undisputed that the plaintiffs' failure to dispute the enforceability of the Loans in their bankruptcy petition did not result from mistake or inadvertence.[5] They have failed to meet this burden and, accordingly, the court cannot conclude that the doctrine of judicial estoppel bars the plaintiffs' Mortgage Validity claims.

### III. The Plaintiffs' Mortgage Validity Claims Are Barred by *Res Judicata*

Courts apply the doctrine of *res judicata* to promote the finality of judgments, which in turn increases certainty, discourages multiple litigations, and conserves judicial resources. *Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992) (citing *Federated Dep't Stores v. Moitie*, 452 U.S. 394 (1981)). *Res judicata*, or claim preclusion, has four elements: (1) a final decision on the merits in the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) an identity of the causes of action. *Sanders*, 973 F.2d at 480; *see Browning v.*

---

[5] The Mortgage Defendants appear to dance around the "mistake or inadvertence" prong without directly addressing it. Instead, they rebut the plaintiffs' reliance on the discovery rule by focusing on the plaintiffs' "constructive knowledge" of the Warranty Deed at the time of the bankruptcy. Despite the parties' discussion of the discovery rule, however, neither party has identified the relationship between "constructive knowledge" and the "mistake or inadvertence" prong of the Sixth Circuit's judicial estoppel standard, nor has the court been able to find precedent linking the two inquiries for purposes of the doctrine of judicial estoppel. Accordingly, here, the court makes no finding as to the relationship between "constructive knowledge" and the doctrine of judicial estoppel.

*Levy*, 283 F.3d at 771-72. The party asserting the defense—here, the Mortgage Defendants—bears the burden of proof. *Browning*, 283 F.3d at 772.

The Mortgage Defendants argue that *res judicata* clearly precludes the plaintiffs' Mortgage Validity claims. The court agrees that the first three elements of *res judicata* are undisputed. First, confirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings. *Id.* Here, the Bankruptcy Court issued an order confirming the McCords' Chapter 13 Plan in 2006, constituting a final judgment on the merits by a court of competent jurisdiction. Second, the Sixth Circuit has determined that creditors—and their successors-in-interest—are parties to a bankruptcy order for purposes of *res judicata*. *Sanders*, 973 F.3d at 481.

The third element of *res judicata* prohibits parties from bringing claims they have already brought or could have brought in the first action. Bankruptcy courts have original jurisdiction over all claims arising under the Bankruptcy Code. 28 U.S.C. § 1334(b). Such claims, referred to as "core proceedings," either invoke a substantive right created by federal bankruptcy law or could not exist outside of the bankruptcy. *Browning*, 283 F.3d at 773. The plaintiffs' claims against the Mortgage Defendants are core proceedings because, as claims of the debtors against creditors, they may have altered the Bankruptcy Court's final judgment and therefore, fall within the jurisdiction of that court. Moreover, even if the plaintiffs' claims were "non-core proceedings," the claims are sufficiently related to the plaintiffs' bankruptcy so that the Bankruptcy Court may have referred the matter to the district court for a final adjudication. *Sanders*, 973 F.2d at 481-83. Accordingly, the third element of *res judicata* is present here.

Finally, *res judicata* requires an identity of claims. Identity of claims is satisfied if "the claims arose out of the same transaction or series of transactions, or whether the claims arose out

11

of the same core of operative facts." *Browning*, 283 F.3d at 774. The Mortgage Defendants argue that, because the Confirmation Order and subsequent Discharge Order involve the same facts and issues as the plaintiffs' Mortgage Validity claims, the identity of claims has been established. Here, the identity of claims is shown by the undisputed fact that the plaintiffs verified to the Bankruptcy Court, under penalty of perjury, the validity of the Mortgage Defendants' secured claims and never challenged assignments or transfers related to the Notes when they were filed with the Bankruptcy Court.

The plaintiffs appear to argue that the discovery rule precludes a finding that their claims are barred by *res judicata*. "Under this rule, accrual is delayed 'until the plaintiff has discovered his cause of action.'" *Gabelli v. S.E.C.*, --- U.S. ---, 133 S. Ct. 1216, 1221 (2013) (quoting *Merck & Co. v. Reynolds*, 559 U.S. 633, 644 (2010)). Although the discovery rule typically is discussed in cases assessing accrual of claims for purposes of the statute of limitations, courts have applied the discovery rule to the doctrine of *res judicata* and held that the rule prevents causes of action from accruing until plaintiffs either know or reasonably should know of an act giving rise to a cause of action. *Jiles v. United Parcel Serv., Inc.*, 413 F. App'x 173, 175 (11th Cir. 2011). Under Tennessee law, notice sufficient to trigger accrual of a cause of action under the delayed discovery rule may be actual or constructive. *Carvell v. Bottoms*, 900 S.W.2d 23, 29 (Tenn. 1995) (a plaintiff is deemed to have discovered the right of action if he has either actual knowledge of a claim or actual knowledge of "facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct."); *see also Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 459 (Tenn. 2012) (discussing accrual of claim and discovery rule for statute of limitations purposes).

The plaintiffs submit the McCord Affidavit to substantiate this argument, in which Keven McCord states that, "[p]rior to the conclusion of [the] bankruptcy proceeding, [he does] not recall receiving or reviewing a copy of the Warranty Deed." (Docket No. 54.) However, as the defendants point out, the Warranty Deed was a public document at the time of the bankruptcy proceeding. Indeed, the documents and facts giving rise to the Mortgage Validity claims were available to the plaintiffs as of October 12, 2005 (when the Warranty Deed was filed with Rutherford County)—ten months before the plaintiffs filed for bankruptcy protection, and nearly six years before the Bankruptcy Court discharged the plaintiffs from bankruptcy. Short of the plaintiffs' retention of a new attorney in an attempt to set aside the foreclosure sale of the Property, the record does not indicate that any new events or facts triggered the plaintiffs' overdue decision to contest the validity of the Loans. Accordingly, the plaintiffs' invocation of the discovery rule is unpersuasive, and the court concludes that the plaintiffs' Mortgage Validity claims are barred by the doctrine of *res judicata*.[6]

## IV. The Plaintiffs' Remaining Claims

In their Complaint, the plaintiffs allege an exhaustive list of claims against the Mortgage Defendants. However, despite the 10 causes of action described in the 60-page Complaint, the plaintiffs have submitted only a four-paragraph affidavit as evidence in support of their claims. (McCord Affidavit, Docket No. 54.) Because the court has concluded that the Mortgage Validity

---

[6] Even if the Mortgage Validity claims were not barred by *res judicata*, the court concludes that it would still grant the motion for summary judgment as to the Mortgage Validity claims because the plaintiffs have failed to submit any evidence to substantiate their sweeping allegations against the Mortgage Defendants. Accordingly, the plaintiffs have failed to demonstrate that there is any genuine issue of material fact as to essential elements of their claims, and summary judgment is appropriate for the Mortgage Defendants.

13

claims are barred by the doctrine of *res judicata*, the court need only address the plaintiffs' breach of contract claim against the Mortgage Defendants.

**A. The Plaintiffs' Breach of Contract Claim**

Unlike the Mortgage Validity claims, the plaintiffs' breach of contract claim arises from events taking place in 2012—in particular, allegations that Goldman Sachs and Wilson failed to provide the notice to the plaintiffs of their right to bring a court action to dispute their default of the Loans in breach of the Deeds of Trust and allegations that Goldman Sachs' appointment of defendant Wilson & Associates as a successor trustee breached a Non-Uniform Covenant of the Deeds of Trust. The Complaint cites specifically to Paragraphs 21 and 23 of the Deeds of Trust (Docket No. 1, Ex. 1 (Complaint) at Ex. 1 (Deed of Trust).) To establish a breach of contract in Tennessee, a plaintiff must show (1) the existence of an enforceable contract, (2) non-performance amounting to a breach of the contract, and (3) damages caused by the breached contract. *Northwest Tennessee Motorsports Park, LLC v. Tenn. Asphalt Co.*, 410 S.W.3d 810, 816-17 (Ct. App. Tenn. 2011).

1. <u>Notice Requirements under Paragraph 21 of the Deed of Trust</u>

Paragraph 21 of the Deeds of Trust sets forth certain requirements of notice for the Lender. Specifically, it states:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in the acceleration of the sums secured by this Security Instrument and sale of the Property . . . The notice shall further inform Borrower of the right . . . to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

(*Id.*) The plaintiffs allege that the Mortgage Defendants failed to give them notice that they had the right to bring a court action to assert the non-existence of default. The Mortgage Defendants have submitted their Notice of Default letter to the plaintiffs as evidence in the record. (Docket No. 43, Ex. 14.) By the plain language of the letter, it fails to include the relevant provision required by the Deeds of Trust; accordingly, it appears to be clear that a breach occurred. However, the plaintiffs have failed to submit any evidence as to the third element of their claim: damages. Indeed, the record indicates that the plaintiffs have not suffered any damages due to the breach. Despite the breach, it is undisputed that the plaintiffs were aware of the foreclosure sale before it took place. Moreover, it is undisputed that, even if the notice requirements were fully complied with, the plaintiffs would not have paid the balance due. It is further undisputed that the plaintiffs were incapable of paying the balance of the Loans to prevent a foreclosure sale. The plaintiffs have submitted no further evidence to demonstrate that they incurred damages, and, therefore, no genuine issue of material fact exists as to that essential element of their claim. Accordingly, summary judgment is appropriate for the Mortgage Defendants as to the plaintiffs' breach of contract claim premised on Paragraph 21 of the Deeds of Trust.

    2. <u>Appointment of Successor Trustee Provision</u>

The plaintiffs further allege that Goldman Sachs breached Paragraph 23 of the Deeds of Trust, which provides: "Lender, at its option, may from time to time remove Trustee and appoint a successor Trustee." (Docket No. 1, Ex. 1 at Ex. 1.) The plaintiffs appear to claim that breach occurred because Goldman Sachs was *not* the lender at the time that it appointed Wilson & Associates as Successor Trustee in June 2012. This allegation is unsupported by the record and without merit. First, as the Mortgage Defendants point out, the Deed of Trust expressly permits the assignment of the Loans at Paragraph 19. Second, it is undisputed that Goldman Sachs is the

15

current owner and holder of the Loans, and the Mortgage Defendants have submitted documentary evidence of proper assignments of the Loans since their execution. Therefore, the plaintiffs have failed to demonstrate any issue of material fact as to whether a breach of Paragraph 23 occurred.

Even viewing the evidence in the light most favorable to the plaintiffs, the plaintiffs have failed to demonstrate genuine issues of material fact as to essential elements of their breach of contract claim.[7] Accordingly, summary judgment for the Mortgage Defendants is appropriate.

## V. The Mortgage Defendants' Counterclaim for Reformation of the Deeds of Trust

Finally, the Mortgage Defendants have requested that the court grant summary judgment as to their claim for a reformation of the Deeds of Trust. Specifically, they request that the court alter the date of execution of the Deeds of Trust to match the date of execution of the Warranty Deed (the date that the plaintiffs acquired title to the property) on the grounds of the after-acquired property doctrine.

### 1. The After-Acquired Property Doctrine

The after-acquired property doctrine instructs:

---

[7] The plaintiffs also mention—but do not appear to plead—a violation of T.C.A. § 47-23-106(a) in the breach of contract section of the Complaint. T.C.A. § 47-23-106 sets forth duties of Mortgagees and Lenders, and provides:

> (a) Each creditor shall notify its debtors of the creditor's change of address, within fifteen (15) days of such change of address, if failure to so notify may result in a debtor being assessed late charges or additional interest for failure to timely submit payment.

T.C.A. § 47-23-106. This section expressly provides that it may be enforced by the Tennessee Division of Consumer Affairs or the Department of Commerce and Insurance. *Id.* § 47-23-106(c). Accordingly, the plaintiffs have no right of action under the statute.

16

> If a grantor having no title, a defective title, or an estate less than that which he assumes to grant, conveys with warranty or covenants of like import, and subsequently acquires the title or estate which he purported to convey, or perfects his title, such after-acquired or perfected title will inure to the grantee or to his benefit, by way of estoppel.

*Barksdale v. Keisling*, 13 Tenn. App. 699, 704 (Tenn. Ct. App. 1931). Although infrequently invoked, the doctrine directs that, although the plaintiffs did not have title to the Property at the time they executed the Deeds of Trust and the Loans, the title inured to the lender, Long Beach, at the very minute that the plaintiffs acquired the title, *i.e.*, the day that the Warranty Deed was executed, August 25, 2005. In short, application of this doctrine would lead to the same result as the requested reformation of the Deeds of Trust. However, the Mortgage Defendants have failed to cite—and the court has been unable to find—any precedent granting reformation of a contract on the grounds of that particular doctrine. Although, without guiding precedent, the court declines to grant reformation on such grounds, the court will grant summary judgment as to reformation on the grounds of mutual mistake.

        2. <u>Equitable Reformation of a Contract in Tennessee</u>

"Pursuant to Tennessee law, a court in equity, under certain circumstances, will reform an instrument or deed when it fails to reflect the true intent of the parties. The error in the instrument must have occurred because of the mutual mistake of the parties or because of one party's mistake induced by the other party's fraud." *Holiday Hospitality Franchising, Inc. v. States Res., Inc.*, 232 S.W.3d 41, 51 (Tenn. Ct. App. 2006). "A mutual mistake requires all parties to the contract or instrument to have participated in the error and labored under the same misconception." *Id.* Here, it is self-evident that both parties intended for the Deeds of Trust to secure the Notes, and both parties, by mistake, failed to discover the error until around the time that this lawsuit was filed. The parties demonstrated their true intent as to the Deeds of Trust

17

over the course of nearly seven years between the execution of the Loans and the plaintiffs' default: the plaintiffs made payments on their mortgage from August 2005 until default in 2011, including during the bankruptcy proceedings; both parties alerted the Bankruptcy Court as to the secured claims on the Property; and the Mortgage Defendants sent various communications to the plaintiffs during the relevant period regarding assignments of the Loans and servicing transfers, which the plaintiffs did not dispute. Finally, it is an undisputed fact that the Deeds of Trust were executed for the purpose of securing the Loans. Accordingly, the court finds that the remedy of reformation is appropriate in this context, and the Mortgage Defendants' counterclaim for reformation of the Deeds of Trust will be granted.

## **CONCLUSION**

For the reasons stated herein, the Mortgage Defendants' motion for summary judgment will be granted.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge